# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:07CR56-PPS |
| ) | |
| Dr. JIHAD KASIM, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

In April 2007, Dr. Jihad Kasim was indicted for health care fraud in violation of 18 U.S.C. §1347. This case has had a long and convoluted pretrial history, resulting in large part from competency issues that have involved the necessary evaluations and required two hearings stretching over 10 days. Kasim has now been found competent to stand trial, and has asserted an insanity defense, necessitating another round of examinations. Trial is set for January 4, 2010. As the lengthy pretrial stage of these proceedings continues, the issue before me at present relates to defendant's custody status, more specifically to Kasim's recent renewal of efforts to be released on bond pending trial.

Kasim was initially released on bond pending trial. Following a hearing on December 18, 2009 on a petition of the Probation Office, Magistrate Judge Andrew P. Rodovich revoked Kasim's bond and remanded him to custody pending trial. On June 30, 2010, some six months after the bond revocation, Kasim filed a motion for pretrial release seeking to reopen the detention issue. That motion [DE 242], and the amended version filed on July 15, 2010 [DE 250], were predicated on the state of Kasim's health, namely that he has terminal lung cancer in an advanced stage. After a hearing, Judge Rodovich denied the request for pretrial release in an order dated July 27, 2010 [DE 261]. Kasim has now filed a Motion for Pretrial Release and Review of Revocation Order [DE 260],

by which he asks me to review and reconsider the issue of his pretrial detention. I held a hearing on the motion September 2, 2010.

Fundamentally, the matter of Kasim's detention following revocation is governed by 18 U.S.C. §3148. As pertinent here, §3148(b) provides that the judicial officer "shall" enter an order of revocation and detention if, after a hearing, the judicial officer finds probable cause to believe that the defendant has committed a crime while on release AND EITHER that there are no conditions that will assure the defendant not flee or pose a danger to himself or others OR that the defendant is unlikely to abide by any condition of release. This current review of Kasim's custody status is not an appeal of Judge Rodovich's original revocation order of December 18, 2009. Instead of challenging that determination as in error, Kasim seeks, first from Judge Rodovich and now from me, reconsideration of his detention based upon his presentation of new circumstances. Detention hearings "may be reopened before or after a determination by the judicial officer...if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. §3142(f).

My review of the magistrate judge's recent ruling is permitted by 18 U.S.C. §3145(b): "Section 3145(b) provides for district court review of a magistrate's release or detention order. Pursuant to this provision, the district court must conduct a *de novo* review and need not defer to the magistrate's findings." *United States v. Bernal*, 2010 WL 3039528, *3 (N.D.Ind. July 30, 2010) [Lozano, J.], citing *United States v. Levine,* 770 F.Supp. 460 (N.D.Ind.1991), and *United States v. Shaker*, 665 F.Supp. 698, 701 (N.D.Ind.1987). The district court's review of a magistrate judge's detention order may be conducted either by reviewing the transcript of the hearing before the magistrate judge, or by holding a new hearing. *United States v. Torres,* 929 F.2d 291, 292 (7th

Cir.1991). I give the matter *de novo* consideration based upon the entire record amassed before both Judge Rodovich and myself.

The present reconsideration of Kasim's detention requires revisiting the circumstances giving rise to the earlier bond revocation. These involved Kasim's arrest on December 5, 2009 on charges that he had rammed his car into his former girlfriend's garage door and thrown rocks through her windows. The police further reported that Kasim fled from the scene, disobeying a police car's siren and flashing lights, led police on a dangerous high-speed chase during which several police cars were damaged, and ultimately physically resisted arrest when finally chased down at his own home. This incident was again recently presented at my September 2, 2010 hearing, in the form of affidavits and police reports by the responding Porter County Sheriff's Deputies. [Pltf. Exh. A & C.]

Prior to the December incident, the former girlfriend, Laura Etienne, had obtained an order of protection against Kasim on August 21, 2009, enjoining him from threatening, harassing or contacting Etienne, and ordering Kasim to stay away from Etienne's residence, school and workplace. In her sworn July 16, 2009 petition seeking the order of protection, which was also admitted at the September 2 hearing, Etienne attested that Kasim broke into her house while she was in the shower, took Etienne's cell phone and copied all her contacts, whom he later contacted trying to determine Etienne's whereabouts. [Pltf. Exh. B]. Kasim made no objection to the admission of these exhibits at the September 2, 2010 hearing, and offered no argument disputing the matters asserted in the police reports and protective order documentation.

Kasim does not dispute that there exists probable cause to believe that he committed a crime while on release. The determination then focuses on the existence of conditions sufficient to assure that Kasim won't flee or pose a danger to others and the likelihood that Kasim will be compliant with any conditions of release imposed. Kasim faces a high hurdle here because §3148(b) provides that

3

where there is a probable cause finding as to the defendant's commission of a felony,[1] "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." Kasim argues in essence that, in view of his Stage IV lung cancer and limited life expectancy, the conditions calculus is now sufficiently changed to yield a conclusion in favor of release.

In Judge Rodovich's recent order rejecting Kasim's proposal for release to the custody of his brother in Houston with conditions of home detention and electronic monitoring, he concluded that Kasim "has shown no indication that if released on bond he will abide by the terms of any electronic monitoring" and that Kasim "currently is healthy enough to travel from Texas to Indiana if he chooses to do additional harm to his former girlfriend." Order of July 27, 2010 [DE 261], pp. 3-4. By these findings, Judge Rodovich determined that the circumstances of Kasim's health did not affect his previous conclusion that there do not exist conditions adequate to assure the safety of the community and the likelihood of defendant's compliance with those conditions.

Before me, Kasim again proposes that he be released from custody to live under house arrest with his brother in Houston and be placed on electronic monitoring. After giving the matter careful consideration, I am not persuaded that the present order for Kasim's pretrial detention should be altered. Kasim invokes his diminished condition due to cancer, but the evidence does not support a finding that his daily functioning is particularly impacted by his cancer at present. The evidence at the hearing on September 2, 2010 indicated that, although Kasim has Stage IV lung cancer, which has spread within the lungs and lymph nodes in the chest, it is not known to have metastasized to other organs. Kasim's last performance status rating on the "ECOG" scale, a medical determination of a patient's general well-being, remains a 1 on a scale of 0 (non-symptomatic) to 5 (dead). An

---

[1] Among the catalogue of charges arising from the December 5 incident were two felony counts of Resisting Law Enforcement and one felony count of Criminal Recklessness. [DE 206].

ECOG score of 1 signifies that Kasim is symptomatic but completely ambulatory and capable of light or sedentary activity. Kasim is undergoing chemotherapy, which his current detention apparently permits and accommodates. There was no showing that Kasim is particularly weakened or sickened by the chemotherapy. There was no showing that the Bureau of Prisons is incapable of meeting Kasim's medical needs. The evidence indicates that Kasim has not been losing weight, is walking and is breathing without oxygen. Surprisingly, Kasim's motion cites the evidence presented to Judge Rodovich on July 21, 2010. I have reviewed the transcript of that hearing [DE 263], and find the testimony given there not to be supportive of Kasim's proposal for release, as the doctors who testified underscored Kasim's continued full functioning despite his cancer diagnosis and his continued potential for violence or other behavior not in compliance with court-ordered conditions.

Kasim diminishes the seriousness of the December 5 incident for which his bond was revoked, referring to it as "a property crime." [DE 260, pp. 2 & 4]. The anger and aggressiveness that conduct exhibited, clearly directed toward the person of Kasim's former girlfriend, and the dangerousness of Kasim's high-speed flight from the scene when the police arrived, present serious dangers to the girlfriend in particular and the community in general. Kasim engaged in that conduct not only in violation of state or local law, and in violation of the terms of his release as set by this court, but also in violation of a protective order that prohibited his contact with the former girlfriend.

This three-layered rule-breaking weighs heavily against the likelihood of Kasim's compliance with new conditions of release, particularly where, as even Kasim acknowledges, fairly elaborate and restrictive conditions would be appropriate. Another factor in my conclusion that Kasim fails to persuasively demonstrate that he is likely to comply with any and all conditions of release is the persistence of the defense position that Kasim is currently suffering from significant mental health issues. Also of concern are the conclusions of Judge Rodovich, in the competency context, as to Kasim's malingering and the manipulative and duplicitous behavior that represents: "Although

5

Kasim has portrayed himself to be mentally deficient, he was able to navigate new environments and adjust his personality when it suited him." [DE 211, p.12]. Judge Rodovich also found that the evidence "displays a marked difference in Kasim's behavior when he does not think he is being observed." *Id*. at 13.

Finally, the logistical difficulties of defendant's proposal to be allowed to have home detention with electronic monitoring in his brother's home in Houston, Texas are considerable. The proposal acknowledges the need for close supervision and significant limitations on Kasim's movement and activity, but such supervision and limitations are difficult for me to maintain and monitor at such a distance, via the Probation and Pretrial Services Office of another district court.

For all these reasons, I conclude that Kasim fails to demonstrate that there exist realistic and workable conditions of release that will assure that the defendant not flee or pose a danger to himself or others. I further conclude that the defendant is unlikely to abide by conditions that any pretrial release would require.

**ACCORDINGLY**, defendant Jihad Kasim's Motion for Pretrial Release and Review of Revocation Order [DE **260**] is DENIED.

Defendant's Motion to Supplement the Motion for Pretrial Release [DE 267] is GRANTED.

The United States' Motion to Seal [DE 270] is GRANTED.

The United States' Motion Requesting Additional Information [DE 274] is DENIED.

**SO ORDERED**.

ENTERED: September __13__, 2010

                                                                                s/ Philip P. Simon  
                                                                                 CHIEF JUDGE  
                                                                                 UNITED STATES DISTRICT COURT